IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DIANNE GRAHAM,

     Plaintiff,

v.

ANTONIO LONG; MIKE KEENER;
WANDA ZELLARS; and
DELMONICA DEWBERRY,

     Defendants.

CIVIL ACTION NO.
1:25-cv-00265-MLB-RDC

## **NON-FINAL REPORT AND RECOMMENDATION**

This is an employment discrimination case. Plaintiff Dianne Graham has sued four individuals in connection with her former employment at Clayton State University ("CSU"): Wanda Zellars, Delmonica Dewberry, Antonio Long, and Mike Keener. Proceeding under 42 U.S.C. § 1983,[1] she asserts discrimination and retaliation claims against these individuals, in their official *and* individual capacities, based on alleged violations of the Fourteenth Amendment's Equal Protection Clause[2] and 42 U.S.C. § 1981. (Doc. 9). Defendants have moved to dismiss under Rule 12(b)(6). (Doc. 26). After careful

---

[1] Section 1983 "provides a remedy against 'any person' who, under color of state law, deprives another of rights protected by the Constitution." *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992). The statute "does not in itself create federal rights, but rather provides a vehicle for asserting those rights in situations where a plaintiff 'was deprived of a federal right by a person acting under color of state law.'" *Sprauer v. Town of Jupiter*, 331 F. App'x 650, 652 (11th Cir. 2009) (quoting *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001)).

[2] U.S. Const. amend. XIV, § 1.

review, the undersigned **RECOMMENDS** that Defendants' motion to dismiss be **GRANTED IN PART**.

## I. BACKGROUND

Plaintiff, a light-skinned African-American woman, worked for CSU for more than two decades, from 1999 through her termination in January 2021. (Doc. 9 ¶¶ 11–12, 46). She claims, first, that she was harassed, transferred, and terminated because of her race and/or color,[3] and second, that she was terminated as retaliation for making internal complaints about the mistreatment.

The names and roles of the four individual Defendants are important, so they are detailed here at the outset.

- **Wanda Zellars**: *former* Manager of the CSU Dispatcher Communications Department, where Plaintiff worked. In that role, Zellars had the authority to make personnel decisions, including hiring and termination, for the Assistant Communications Manager and Public Safety Communications Dispatcher positions—both of which were held by Plaintiff during the relevant period. Zellars was Plaintiff's immediate supervisor. Zellars is a dark-skinned African-American woman. (*Id.* ¶¶ 8, 14–16).

- **Delmonica Dewberry**: *current* Manager of the CSU Dispatcher Communications Department. When Plaintiff was transferred from Assistant Communications Manager to Public Safety Communications Dispatcher (described below),

---

[3] Although Plaintiff describes two disciplinary incidents, she does not claim that the incidents were discriminatory. *See* (Doc. 9 ¶¶ 30–33, Counts I & II).

Dewberry was selected to backfill the former position. Dewberry is a dark-skinned African-American woman. (*Id.* ¶¶ 9, 28–29).

- **Antonio Long**: *former* CSU Chief of Police. In that role, he had the authority—along with Zellars—to make personnel decisions for the Assistant Communications Manager and Public Safety Communications Dispatcher positions. Long was Zellars's immediate supervisor, and Plaintiff's second-level supervisor. Long is a dark-skinned African-American man. (*Id.* ¶¶ 6, 17–19).

- **Mike Keener**: *current* CSU Chief of Police. He was not involved in the relevant events, but Plaintiff named him as a defendant pursuant to Rule 25(d) as Long's successor.[4] (*Id.* ¶ 7 and 3 n.1).

Having set the table, here's what allegedly happened.[5]

### A. Factual Background

In March 2020, after more than twenty years at CSU, Plaintiff "personally observed disparate treatment from her dark-skinned African American coworkers, noting that, as a light-skinned African American, she was the only individual subjected to verbal disrespect based on the color of her skin." (Doc. 9 ¶ 20). On March 20, 2020, she reported her observations to Zellars. (*Id.* ¶ 21). To her knowledge, however, Zellars took no corrective

---

[4] Rule 25(d) provides, as relevant, that "[a]n action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party." Fed. R. Civ. P. 25(d).

[5] When evaluating a motion to dismiss, the Court "accept[s] the allegations in the complaint as true and construe[s] them in the light most favorable to the plaintiff." *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003).

action, and the "colorist treatment from her coworkers" continued. (*Id.* ¶¶ 22–23). Aside from these quoted allegations, Plaintiff has presented no further details about the alleged coworker harassment.

In November 2020, Plaintiff learned that CSU would be implementing a reduction in force ("RIF"). (*Id.* ¶ 26). Plaintiff kept her employment, but as part of the RIF, Zellars transferred her to a new position—specifically, she moved from Assistant Communications Manager to Public Safety Communications Dispatcher. (*Id.* ¶¶ 13, 27, 45). In turn, Zellars selected Dewberry—a recently hired coworker—to backfill the vacated Assistant Communications Manager position. (*Id.* ¶¶ 28, 45).

In December 2020, Plaintiff was disciplined twice in her new Dispatcher role. First, on December 1, she was reprimanded (Plaintiff doesn't say by whom) for allegedly missing an incoming call from an officer. (*Id.* ¶ 32). After checking her records, however, Plaintiff didn't see any missed calls. (*Id.* ¶ 33). Next, on December 11, she received a verbal counseling from Corporal Shelby Hatcher—a non-party to this lawsuit—because she allegedly relayed incorrect vehicle identification information. (*Id.* ¶ 30). But according to Plaintiff, she shouldn't have been disciplined because Zellars had "checked and affirmed" the information before it was sent. (*Id.* ¶ 31).

Soon after, in January 2021, Plaintiff's hours were reduced and she was ultimately fired. She noticed the reduction in hours on January 8, and that day she met with Zellars to discuss several concerns—reduced hours, the recent disciplinary incidents, and her prior March 2020 complaint about colorist mistreatment from coworkers. (*Id.* ¶ 35). During her conversation with Zellars, Plaintiff asked: "Is this happening because I'm lighter skinned?"

4

(*Id.* ¶ 36). Less than two weeks later, on January 19, Zellars and Long terminated her employment. (*Id.* ¶¶ 37–38). As explanation, she was told that she was only a provisional employee following transfer to the Dispatcher position. (*Id.* ¶ 39).

### B. Procedural History

Plaintiff filed her original complaint on January 21, 2025, naming The Board of Regents of the University System of Georgia (the "BOR") as the sole defendant. (Doc. 1). There, she asserted discrimination and retaliation claims against the BOR under Section 1981. (*Id.*, Counts I and II). She referenced Zellars and Dewberry by name, but did not mention Long or Keener.

The BOR moved to dismiss because, based on sovereign immunity, it was an "improper defendant." (Doc. 4 at 5). Then, on April 4, 2025, Plaintiff timely amended her complaint to substitute the individual defendants. In her amended complaint—the operative pleading, (Doc. 9)—Plaintiff swapped out the BOR for the four individual defendants, added some corresponding allegations, (*id.* ¶¶ 6–9, 16–19, 37–38), and also added claims under the Equal Protection Clause. She served the newly named individual defendants between June 30 and July 10, 2025. (Docs. 20, 21, 24, 25).

The individual defendants then promptly filed the pending motion to dismiss. (Doc. 26). The motion is ripe and ready for review.

## II. LEGAL STANDARD

When evaluating a motion to dismiss under Rule 12(b)(6), the reviewing court looks to see whether the pleading "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The touchstone is plausibility rather than mere possibility. *Id.* ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."). And a claim's plausibility must be buoyed by facts over fancy. *Id.* (explaining that a complaint must include more than "an unadorned, the-defendant-unlawfully-harmed-me accusation").

Although a court is required to accept well-pleaded facts as true and make reasonable inferences in favor of the plaintiff, it need not accept the plaintiff's legal conclusions or unwarranted deductions of fact. *See Chandler v. Sec'y of Fla. Dep't of Transp.*, 695 F.3d 1194, 1199 (11th Cir. 2012). Ultimately, the pleading standard requires the claimant to allege sufficient facts to allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. As relevant here, in the employment context, a plaintiff generally need not make out a *prima facie* case of discrimination, but must nevertheless include enough facts to plausibly suggest the employer unlawfully discriminated against her. *See Henderson v. City of Birmingham, Ala.*, 826 F. App'x 736, 740 (11th Cir. 2020).

### III. DISCUSSION

Defendants have moved to dismiss on several grounds. First, they say all of Plaintiff's claims—whether based on the Equal Protection Clause or Section 1981—are untimely. Next, Defendants argue that Plaintiff's official-capacity claims are limited to prospective injunctive relief—that is to say, she cannot recover monetary damages on the claims. And, finally, as to Plaintiff's individual-capacity claims, Dewberry, Long, and

6

Keener argue that the claims have not been adequately stated (Zellars did not join this argument).

Plaintiff's amended complaint, although short, bears some hallmarks of a shotgun pleading—for instance, the pleading includes "multiple counts that each adopt the allegations of all preceding counts," it fails "to separate each cause of action or claim for relief into distinct counts," and it also "combin[es] multiple claims against multiple defendants without specifying which defendant is responsible for which act." *McDonough v. City of Homestead*, 771 F. App'x 952, 955 (11th Cir. 2019) (citing *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321–23 (11th Cir. 2015)). Those pleading deficiencies metastasized into briefing deficiencies, which complicate the Court's task.

In any event, the discussion is divided into three sections, one for each of Defendants' principal arguments, although there is some overlap between them.

### A. Timeliness

Plaintiff's claims based on violations of the Equal Protection Clause and Section 1981, all of which are brought under Section 1983, are governed by two different limitations periods. The undersigned concludes that the former claims are barred, while a subset of the latter claims are timely.

#### i. Equal Protection Clause

A two-year statute of limitations applies to Plaintiff's constitutional claims. As noted, Plaintiff's Equal Protection claims are brought pursuant to Section 1983—that statute, in turn, does not include its own limitations period. The limitations period must therefore come from elsewhere, and courts generally apply "the most appropriate and

analogous state statute of limitations." *Corey v. Rockdale Cnty.*, 689 F. Supp. 3d 1251, 1264 (N.D. Ga. 2023) (Brown, J.), *affirmed in relevant part*, No. 23-13097, 2025 WL 1325325 (11th Cir. May 7, 2025); *see also McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008) ("All constitutional claims brought under § 1983 are . . . subject to the statute of limitations governing personal injury actions in the state where . . . the action has been brought."). In Georgia, the limitations period is two years. *See* O.C.G.A. § 9-3-33; *Mullinax v. McElhenney*, 817 F.2d 711, 716 n.2 (11th Cir. 1987) ("[T]he proper limitations period for all Section 1983 actions in Georgia is the two-year limitations period set forth in O.C.G.A. § 9-3-33.").

Plaintiff's Equal Protection claims are untimely. The claims accrued by January 19, 2021, when she was fired. But she didn't file suit until January 21, 2025, four years later. Plaintiff herself acknowledges the problem, but she says in passing that "the Court should consider whether equitable tolling is appropriate in light of Defendants' misclassification of Plaintiff's status as provisional only after her demotion, and the misleading characterization of her employer's legal identity." (Doc. 31 at 11). It's not entirely clear what she's referring to, but two things—first, this perfunctory suggestion devoid of any citation to law does not constitute an argument, and the Court therefore need not consider it. *See Western Sur. Co. v. Steuerwald*, No. 16-61815-CV, 2017 WL 5248499, at *2 (S.D. Fla. Jan. 17, 2017 ) (collecting cases). And second, in any case, equitable tolling is an "extraordinary remedy," and Plaintiff hasn't met her burden to trigger it. *See Steed v. Head*, 219 F.3d 1298, 1300 (11th Cir. 2000) ("Equitable tolling is an extraordinary remedy which is typically applied sparingly."); *Zamudio v. Haskins*, 775 F. App'x 614, 615 (11th Cir.

8

2019) ("The plaintiff bears the burden of demonstrating that equitable tolling is warranted."). She has not shown, for instance, that she diligently pursued her rights in the two years prior to filing, or that extraordinary events prevented her from doing so. *See Zamudio*, 775 F. App'x at 616–17 (rejecting the plaintiff's equitable tolling argument because the facts alleged showed "that he did <u>nothing</u> to pursue his rights for a span of two years" (emphasis in original)).

Because Plaintiff filed her Equal Protection Clause claims two years too late and there is no basis to apply equitable tolling, the claims should be dismissed as untimely.

### ii. Section 1981

By contrast, a four-year limitations period applies to Plaintiff's Section 1981 claims. *See Baker v. Birmingham Bd. of Education*, 531 F.3d 1336, 1337–38 (11th Cir. 2008) (holding that the four-year limitations period set out in 28 U.S.C. § 1658(a) applies to Section 1981 claims against public actors made possible by the 1991 amendments to Section 1981).

Plaintiff filed her original complaint on the last day of the four-year limitations period.[6] So far, so good. The trouble, however, is that her original complaint named the BOR as the sole defendant. (Doc. 1). She didn't file her amended complaint to substitute in the individual defendants until more than two months later, after the BOR moved to dismiss on sovereign-immunity grounds. (Doc. 9). By that point, the limitations period had

---

[6] The four-year anniversary of Plaintiff's termination was January 19, 2025, which fell on a Sunday. Because of weekends and holidays, expiration of the limitations period was pushed until two days later, on January 21, 2025.

expired. And she didn't serve the individual defendants for another three months. (Docs. 20, 21, 24, 25). All of which raises the issue, contested by the parties, whether Plaintiff's claims against the individual defendants relate back to the date of her original complaint. Although it is a bit complicated, the undersigned finds that Plaintiff's claims against Keener and Dewberry in their *official* capacities, plus her claims against Zellars and Long in their *individual* capacities, do indeed relate back to the filing of her original complaint. But the undersigned concludes that the remainder of her claims are untimely and due to be dismissed on that basis.[7]

As relevant, relation back is governed by Federal Rule 15(c)(1)(C), which provides:

An amendment to a pleading relates back to the date of the original pleading when:

[. . .]

(C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

(i) received such notice of the action that it will not be prejudiced in defending on the merits; and

(ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

---

[7] As an initial matter, the undersigned notes that Defendants suggest an amended complaint seeking to add new defendants cannot relate back, period. (Doc. 26 at 8). That is incorrect. *See Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 548 n.3 (2010) (describing "the circumstance of a plaintiff filing an amended complaint seeking to bring in a new defendant" as the "typical case"); *Kilpatrick v. Lauderdale Cnty. Sheriff's Dep't*, No. 3:20-cv-00098, 2020 WL 6937843, at *7 (N.D. Ala. Nov. 13, 2020) (permitting relation back under Rule 15(c)(1)(C) where the plaintiff "erroneously named a non-suable entity when she should have named individual defendants who serve as officers of that entity").

Fed. R. Civ. P. 15(c)(1)(C). To spell things out a bit more clearly, relation back is appropriate *only* when the following conditions are satisfied: (1) the plaintiff's proposed amendment asserts a claim that arose out of the conduct, transaction, or occurrence alleged (or attempted to be alleged) in the original complaint; and *within 90 days after the action was filed*, (2) the proposed new defendant(s) received sufficient notice of the action that they will suffer no prejudice in defending the merits; and (3) the proposed new defendant(s) also knew or should have known that the plaintiff would have named them in the original complaint, but for a mistake about the proper party's identity. *See Kilpatrick*, 2020 WL 6937843, at *5. The plaintiff has the burden of showing these conditions have been met. *See id.* at *4.

There is no dispute here about the first condition. All of Plaintiff's current claims relate to the same underlying employment events alleged in her original complaint. The questions, then, are whether the individual defendants were timely notified of this action, and whether they knew or should have known that they were omitted from the original complaint by mistake. Starting with the issue of notice, the undersigned finds that all four individual defendants received timely notice of this action within 90 days of Plaintiff's original complaint. Plaintiff filed her original complaint on January 21, 2025, and she filed her amended complaint naming the individual defendants on April 4, 2025—74 days later. Moreover, it is fair to conclude that, at the latest, the individual defendants learned of the action on or around that date. Plaintiff's claims relate to her work tenure at the CSU Police Department, and all of the defendants either currently occupy or, during the relevant period, did occupy positions of authority there (Chief of Police or Manager of Dispatch

11

Communications). Two of them—Zellars and Dewberry—were specifically identified by name in the original complaint. And all share the same attorney from the Georgia Office of the Attorney General—the same attorney who, significantly, also represented the BOR, the party that Plaintiff erroneously named as the defendant in her original complaint. That same attorney, as previously noted, moved to dismiss the BOR as an "improper defendant," (Doc. 4 at 5), which then prompted Plaintiff to file her amended complaint naming the individual defendants instead. "Courts impute notice of a plaintiff's claims to newly named defendants when the same attorney represents both the new defendants and the original defendants, particularly when that attorney has asserted arguments indicating awareness that the original defendants did not constitute the proper parties." *Kilpatrick*, 2020 WL 6937843, at *5 (collecting cases); *Kuria v. Palisades Acquisition XVI, LLC*, 752 F. Supp. 2d 1293, 1305 (N.D. Ga. 2010) ("Because counsel for the incorrectly named defendant was the same person as for the correctly named defendant, there was immediate actual notice to the proper defendant that it should have been named in the lawsuit but for Kuria's mistake."). Under the circumstances, the undersigned finds that the individual defendants each had timely notice of this action.

Even if they had timely notice of the action, however, Plaintiff must also show that they knew or should have known that they were omitted from the original complaint by mistake. That showing is not so straightforward. Plaintiff, by her own admission, made a legal mistake in naming the BOR as the sole defendant in the original complaint. (Doc. 31 at 10 ["Plaintiff acted promptly to correct a good-faith legal mistake regarding the proper party's identity."]). As she now seems to concede, the BOR was indeed an improper party.

12

Her error was an obvious one, but for now that doesn't matter. *See Krupski*, 560 U.S. at 548 ("Rule 15(c)(1)(C)(ii) asks what the prospective *defendant* knew or should have known during the Rule 4(m) period, not what the *plaintiff* knew or should have known at the time of filing her original complaint." (emphasis in in original)). So if Plaintiff mistakenly included the BOR, who did she mistakenly exclude? Or put another way, who among the individual defendants should Plaintiff have named in the original complaint as a proper party instead of the BOR? To answer that question, we have to recognize that, in a manner of speaking, Plaintiff substituted *eight* different defendants in her amended complaint— four individuals, with each sued in their official and individual capacities.[8] Rephrasing once again, as we continue to narrow down the precise issue presented, which of the set of eight possible defendants were the proper parties to Plaintiff's original complaint?

The answer hinges on the type of relief sought. When a plaintiff sues a state employee in an official capacity, she can only obtain prospective injunctive or declaratory relief. *See Cross v. State of Ala., State Dep't of Mental Health & Mental Retardation*, 49 F.3d 1490, 1503 (11th Cir. 1995) ("The Eleventh Amendment bars [a] section 1983 lawsuit for monetary damages against [individuals named] in their official capacities."). By contrast, when she sues a state employee in an individual capacity, she may only recover monetary damages. *See DeWitt v. Person*, No. 23-11203, 2025 WL 1368170, at *2 n.3 (11th Cir. May 12, 2025) ("In an individual capacity suit, a plaintiff may only seek

---

[8] Even if it might be more technically accurate to say that Plaintiff named just *four* defendants while asserting two sets of claims against each (official-capacity and individual-capacity), the important point is that the total number of relevant permutations is *eight*.

monetary damages; in an official capacity suit, a plaintiff may only seek injunctive or declaratory relief." (citation omitted)). What type of relief, then, did Plaintiff ask for in her original complaint—injunctive and declaratory, or monetary? Both. She concluded her original complaint with a "Prayer for Relief" section that listed "actual and compensatory damages," as well as "[d]eclaratory relief," "[i]njunctive relief," and "any other relief th[e] Court deems just and proper." (Doc. 1 at 8). Thus, in the undersigned's view, Plaintiff plainly requested both types of relief. And she appears to be seeking both types in her amended complaint as well. (Doc. 9).[9] A final iteration of our inquiry, then, amounts to the following: which of the defendants was the proper party insofar as Plaintiff sought (1) injunctive and declaratory relief, or (2) monetary damages?

As to injunctive relief, the proper parties were Keener and Dewberry, in their official capacities. That's it. Plaintiff has alleged, without dispute at this stage, that Keener and Dewberry are the current Chief of Police and Manager of Dispatch Communications, respectively. (Doc. 9 ¶¶ 7, 9). In these positions, Plaintiff has also alleged—again, with no dispute for present purposes—that Keener and Dewberry have the current authority to effect injunctive relief. *See* (*id.* ¶¶ 14, 16–17, 19). By contrast, based on the information before the Court, Long and Zellars do not. Although Long was the Chief of Police and Zellars the Manager of Dispatch Communications during Plaintiff's tenure, they no longer hold these positions of authority. As a result, Long and Zellars, in their official capacities,

---

[9] For instance, in her amended complaint, Plaintiff asks for "[i]njunctive relief" and "[a]ny other relief" the Court deems appropriate, while she also claims "lost back pay" and "lost front pay." (Doc. 9 ¶¶ 53, 69, and at 12).

were not the proper parties from whom injunctive relief could have been sought when the action commenced. *See Overall v. Watson*, No. 4:17-cv-02063-KOB, 2018 WL 3475434, at *9 (N.D. Ala. Jul. 19, 2018) ("A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As a result, a plaintiff cannot file suit against a *former* state official in his official capacity, because that person no longer represents the office." (cleaned up)). So, omission of Long and Zellars in their official capacities could not have been a legal mistake—they were, in other words, never proper parties. Separately, as already explained, injunctive relief could not (and cannot) be obtained from any of the defendants sued in their individual capacities. *See DeWitt*, 2025 WL 1368170, at *2 n.3. It follows, then, that *only* Keener and Dewberry, in their current official capacities, could possibly have known that they were mistakenly omitted from Plaintiff's original complaint insofar as she asked for injunctive and declaratory relief.

Turning to monetary damages, the proper parties about whom Plaintiff made a legal mistake when she filed her original complaint were Long and Zellars, in their individual capacities. As noted, monetary damages cannot be obtained from employees sued in their official capacities. *See DeWitt*, 2025 WL 1368170, at *2 n.3. That is to say, if Plaintiff's mistake was to seek monetary damages from the BOR when she filed her original complaint, she would be just as mistaken to seek those damages through official-capacity claims now. *See id.*; *Monroe v. Fort Valley State Univ.*, 93 F.4th 1269, 1283 (11th Cir. 2024) (holding that the Georgia Board of Regents is an "arm of the State for Eleventh Amendment purposes" and therefore "entitled to sovereign immunity"). Relation back

15

allows for the correction of mistakes—not their multiplication. So, none of Plaintiff's official-capacity claims relates back with respect to her original request for monetary damages. As for Plaintiff's individual-capacity claims, only Long and Zellars may be liable. Long and Zellars are the individuals who made the adverse employment decisions about which she complains. Meanwhile, neither Keener nor Dewberry is alleged to have engaged in any wrongdoing. Keener had no personal connection to the underlying events whatsoever and has been named simply because he is Long's successor as Chief of Police. As for Dewberry, the only allegation here is that she replaced Plaintiff after the RIF transfer. Keener and Dewberry did not make any relevant employment decisions or otherwise engage in any alleged misconduct. *See Iqbal*, 556 U.S. at 677 ("In a § 1983 suit . . . each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Their omission from the original complaint, therefore, could not have been a legal mistake insofar as Plaintiff is seeking monetary damages.

The upshot is that Plaintiff made a legal mistake in naming the BOR as the defendant in her original complaint, but her claims relate back only insofar as the newly named defendants represent viable correctives to that mistake. There are four such instances. Plaintiff prayed for injunctive and declaratory relief from the BOR, but only current officials can be sued for such relief. So, Plaintiff's mistake was to omit Keener and Dewberry in their current *official* capacities, and the corresponding claims in her amended complaint relate back. Plaintiff also prayed for monetary damages from the BOR, but only individuals alleged to have broken the law can be liable. Here, Plaintiff's mistake was to omit Long and Zellars in their *individual* capacities as the proper parties, and her

16

corresponding claims in the amended complaint also relate back. The just-described claims are the *only* ones that relate back. The remainder are due to be dismissed as untimely.

If District Judge Brown concludes that all of Plaintiff's claims are untimely, then what follows will be superfluous. If, however, Judge Brown agrees with the preceding analysis or otherwise finds that at least some of Plaintiff's claims are timely, then the Court must address the merits of such claims, to which the discussion now turns.

### B. Official-Capacity Claims

Despite some back-and-forth about whether and to what extent Plaintiff's official-capacity claims may proceed, the parties seem to have reached agreement on the correct legal proposition—namely, that under *Ex parte Young*,[10] claims against state officials in their official capacities are permitted where the plaintiff seeks injunctive and/or declaratory relief.[11] *See Isaac A. v. Carlson*, 775 F. Supp. 3d 1296, 1328–32 (N.D. Ga. 2025)

---

[10] 209 U.S. 123 (1908).

[11] *See* Doc. 26 at 9–10 (Defendants' motion to dismiss, arguing that Plaintiff's official-capacity claims for monetary damages are barred by Eleventh Amendment immunity); Doc. 31 at 11 (Plaintiff's response, stating: "While it is true that damages may not be recovered against state officers sued in their official capacities, Plaintiff expressly seeks prospective equitable relief, including reinstatement and an injunction . . . ."); Doc. 32 at 5–6 (Defendants' reply, clarifying: "To clarify, Defendants made no argument to the contrary in their motion and acknowledge that, per *Ex parte Young*, official capacity suits may be brought for prospective equitable relief such as reinstatement."). The undersigned notes that, in their motion, Defendants misstated the law in one respect. They initially argued that "the individual defendants in their official capacities are not 'persons' subject to suit under Section 1983," but as they later conceded, that is only partially correct. An individual defendant sued in an official capacity for damages is not a person, but one sued for prospective injunctive relief is. *See Edwards v. Wallace Cmty. College*, 49 F.3d 1517, 1524 (11th Cir. 1995) ("A state, a state agency, and a state official sued in his official capacity are not 'persons' within the meaning of § 1983, thus damages are unavailable; but a state official sued in his official capacity is a person for purposes of § 1983 when prospective relief, including injunctive relief, is sought."); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989) ("Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State." (quotations and citation omitted)).

(discussing sovereign immunity and *Ex parte Young*); *Lane v. Central Ala. Cmty. College*, 772 F.3d 1349, 1351 (11th Cir. 2014) (same). In other words, insofar as—*but only insofar as*—Plaintiff is seeking injunctive and declaratory relief, her official-capacity claims are not barred as a matter of law.

Notably, Defendants have not moved to dismiss Plaintiff's official-capacity claims on the merits. With the legal question regarding the viability of those claims correctly resolved through agreement, then, the claims may advance if they are timely. That is to say, if Judge Brown finds that some or all of Plaintiff's official-capacity claims relate back (as discussed above), then such claims should advance to discovery.

### C. Individual-Capacity Claims

Things stand differently with respect to Plaintiff's individual-capacity claims. She has alleged discrimination and retaliation, and her claims will be addressed in that order.

#### i. Discrimination

Plaintiff says she was discriminated against based on her skin color. Defendants only challenge the individual-capacity discrimination claims against Dewberry, Long, and Keener—in other words, they do *not* challenge the corresponding discrimination claims against Zellars.

To state a claim for discrimination under Section 1981, a plaintiff must allege facts to show that her race or color was the "but-for" cause of the challenged employment action. *See Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 689 U.S. 327, 341 (2020) ("To prevail [under Section 1981], a plaintiff must initially plead and ultimately prove that, but for race, [she] would not have suffered the loss of a legally protected right.");

*Rodemaker v. Shumphard*, 859 F. App'x 450, 452 (11th Cir. 2021) ("One key difference [between Title VII and Section 1981], significant here, is that a [Section] 1981 plaintiff 'must initially plead and ultimately prove that, but for race, [she] would not have suffered the loss of a legally protected right.'" (quoting *Comcast Corp.*, 689 U.S. at 341)). While the plaintiff need not allege that race or color was the sole cause of the employment action, she must present enough facts to plausibly suggest that, but for her race or color, the action would not have occurred. *See Comcast Corp.*, 689 U.S. at 331–32. Put another way, the plaintiff must allege that her race or color had a "determinative influence." *See Ziyadat v. Diamondrock Hosp. Co.*, 3 F.4th 1291, 1298 (11th Cir. 2021).

Here, Plaintiff has not presented enough facts to suggest that Dewberry, Long, or Keener took *any* adverse actions based on unlawful motives. Starting with Dewberry, there is no allegation that she took any action at all. All we know about her in connection to the underlying events is that Zellars transferred her to backfill Plaintiff's former position in connection with the RIF.[12] (Doc. 9 ¶¶ 28, 45). There is no sign, however, that Dewberry herself was responsible for that decision. As for Long, Plaintiff alleges that he participated with Zellars in making the decision to terminate her employment. (*Id.* ¶ 37). But Plaintiff has introduced zero facts to suggest that Long acted unlawfully. Plaintiff hasn't alleged, even in conclusory terms, that Long himself was motivated by her skin color. She says only that he participated in the termination decision. That alone is not enough to sustain liability. *See Uppal v. Hospital Corp. of Am.*, No. 8:09-cv-634, 2011 WL 2631869, at *3 (M.D. Fla.

---

[12] Confusingly, Plaintiff describes Dewberry as dark-skinned, (Doc. 9 ¶ 29), but she later refers to Dewberry as a "light-skinned African American individual," (*id.* ¶ 45).

Jul. 5, 2011) ("District courts frequently dismiss discrimination claims when the allegations of disparate treatment are nothing more than legal conclusions unsupported by any facts." (collecting cases)). Finally, turning to Keener, Plaintiff has named him solely as the official successor of Long as the CSU Chief of Police—there are no allegations implicating him individually in any of the relevant employment decisions.

In short, Plaintiff's discrimination claims against Dewberry, Long, and Keener are unsupported. There is no plausible suggestion that any of these three individuals personally took action against Plaintiff based on her skin color (as explained, two of them took no action at all). Although Plaintiff says that dark-skinned coworkers subjected her to "verbal disrespect," she has not alleged that Dewberry, Long, and Keener had anything to do with this coworker misconduct. And in any event, Plaintiff's bare-bones allegation of verbal disrespect is too conclusory for consideration. *See Iqbal*, 556 U.S. at 679 ("[P]leadings that, because they are no more than conclusions, are not entitled to the assumption of truth."). What we are left with in the end are claims of unlawful discrimination predicated solely on the fact that Plaintiff's second-level supervisor and transfer replacement had a different skin color. That is all. Absent, for instance, are any allegations that Dewberry, Long, or Keener made any offending remarks, jokes, gestures, or displays. And there is no hint, through comparator or statistical facts, that Plaintiff was treated differently based on her skin color. *See Hughley v. Upson Cnty. Bd. of Comm'rs.*, 696 F. App'x 932, 935–36 (11th Cir. 2017) (upholding the dismissal of the plaintiff's discrimination claims because he failed to allege any facts suggesting the employer treated similarly-situated employees outside his protected class more favorably).

20

Though litigants often suppose otherwise, courts "do not sit as a 'super-personnel department,' and it is not [the courts'] role to second-guess the wisdom of an employer's business decisions." *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010). The ultimate question in employment discrimination cases is not whether the employer's actions were prudent, fair, or wise, but whether they were motivated by discrimination. *See Owens v. Governor's Off. of Student Achievement*, 52 F.4th 1327, 1338 (11th Cir. 2022) ("An employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." (quotations and citation omitted)). And here, there is no plausible suggestion that Dewberry, Long, or Keener were, at any time, unlawfully motivated by Plaintiff's skin color. Accordingly, Plaintiff's discrimination claims against these three individuals should be dismissed.[13]

### ii. Retaliation

Next, Plaintiff claims that she was terminated in retaliation for complaining about her alleged workplace mistreatment. As with her discrimination claims, Defendants *only* challenge the individual-capacity retaliation claims against Dewberry, Long, and Keener (i.e., they do *not* challenge the retaliation claim against Zellars). "Retaliation claims, including employment-related retaliation claims, are cognizable under § 1981, despite the

---

[13] Defendants argue, additionally, that these three individuals are shielded by qualified immunity. (Doc. 26 at 14-16). But qualified immunity is an affirmative defense and, seeing as Plaintiff hasn't stated any plausible claims against Dewberry, Long, or Keener in the first instance, the Court need not address the issue. *See Schuster v. Henry Cnty., Ga.*, No. 1:05-cv-239-TWT, 2007 WL 1701795, at *7 (N.D. Ga. Jun. 7, 2007) ("Because the Plaintiff has no claim, the Court need not address the issue of the Defendants' qualified immunity.").

fact that the statute contains no explicit retaliation provision." *Bell v. City of Auburn, Ala.*, 722 F. App'x 898, 900 (11th Cir. 2018). To state a Section 1981 retaliation claim, the plaintiff must allege that the defendant retaliated against her because she engaged in statutorily protected activity. *Jimenez v. Wellstar Health Sys.*, 596 F.3d 1304, 1311 (11th Cir. 2010). Retaliation claims under Section 1981, like discrimination claims, require a showing of but-for causation. *See Posey v. Atlanta Pub. Schools*, 722 F. Supp. 3d 1350, 1363 (N.D. Ga. 2024).

Plaintiff's retaliation claims are no better pled than their discrimination counterparts. It is undisputed that Plaintiff engaged in protected activity when she complained twice to Zellars,[14] but she has failed to adequately allege that Dewberry, Long, or Keener retaliated against her in response. First of all, neither Dewberry nor Keener participated in or influenced the decision to terminate Plaintiff, so they cannot be held personally liable for that decision. As for Long, although he made the termination decision with Zellars, there are no allegations suggesting that he was aware of Plaintiff's complaints. According to Plaintiff, she made two internal complaints—about, among other things, her coworkers' alleged harassment and her reduced hours. But she made both of those complaints to Zellars, not Long. (Doc. 9 ¶¶ 20–21, 34–35). And there are no facts to suggest that Zellars told Long about Plaintiff's complaints, or that he otherwise learned about them before the termination decision was made. A decisionmaker cannot retaliate for activity that he was unaware of. *See Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799

---

[14] Defendants do not challenge Plaintiff's protected activity.

(11th Cir. 2000) ("A decision maker cannot have been motivated to retaliate by something unknown to him."); *Green v. Ala. Dept. of Rev.*, 746 F. App'x 929, 932 (11th Cir. 2018) (affirming dismissal of retaliation claim in part because plaintiff offered "no specific facts" establishing that the person who engaged in adverse action against the plaintiff was aware of plaintiff's engagement in protected activities).

Because Dewberry and Keener had nothing to do with the decision to end Plaintiff's employment, they cannot be individually liable for retaliation. Nor can Long, as there is no sign that he was aware of Plaintiff's protected activity when he participated in the termination decision. For these reasons, Plaintiff's retaliation claims against Dewberry, Long, and Keener should also be dismissed.[15]

### IV. CONCLUSION

For the reasons stated, the undersigned **RECOMMENDS** that Defendants' motion to dismiss, (Doc. 26), be **GRANTED IN PART**. For the sake of clarity in the event of objections, the undersigned **RECOMMENDS** that:

1. Plaintiff's Equal Protection claims should be **DISMISSED** as untimely.

2. Plaintiff's Section 1981 official-capacity claims against Keener and Dewberry **SHOULD PROCEED** as timely filed (following relation back under Rule 15(c)), but her recovery must be limited to prospective injunctive and declaratory relief; meanwhile, her Section 1981 official-capacity claims against Zellars and Long should be **DISMISSED** as untimely.

---

[15] Here again, the Court need not address Defendants' additional argument related to qualified immunity.

3.  Plaintiff's Section 1981 individual-capacity claims against Long and Zellars were timely filed (following relation back under Rule 15(c)), but her individual-capacity claims against Keener and Dewberry should be **DISMISSED** as untimely; in any event, Plaintiff's Section 1981 individual-capacity claims against Dewberry, Long, and Keener should be **DISMISSED** as inadequately pled. The upshot is that the individual-capacity claims against Zellars are the only such claims that **SHOULD PROCEED** as both timely filed *and* plausibly stated.

IT IS SO **RECOMMENDED** on this 7th day of November 2025.

REGINA D. CANNON
United States Magistrate Judge