**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**


Dianne Graham,

                    Plaintiff,

                                 Case No. 1:25-cv-265-MLB

v.

Antonio Long, et al,,

                    Defendants.

_____/

## OPINION & ORDER

Defendants Antonio Long, Mike Keener, Wanda Zellars, and Delmonica Dewberry move to dismiss Plaintiff Dianne Graham's discrimination and retaliation claims as barred by the statute of limitations. (Dkt. 26.) The Magistrate Judge issued a Report and Recommendation ("R&R") saying this Court should grant that motion in part. (Dkt. 33.) Defendants object. (Dkt. 35.) The Court adopts the recommendation.

## I.    Background

Dianne Graham (a light-skinned African American) worked for Clayton State University (CSU) from 1999 until her termination on

January 19, 2021.  (Dkt. 9 ¶ 12.)  At first, she worked as an Assistant Communications Manager but then became a Public Safety Communications Dispatcher.  (*Id.* ¶¶ 13, 26.)  When she made that transition, Defendant Delmonica Dewberry (a dark-skinned African American) took her prior position.  (*Id.* ¶ 28.)  In both roles, Graham reported to Defendants Wanda Zellars and Antonio Long (two more dark-skinned African Americans).  (*Id.* ¶¶ 14, 17.)  Dewberry and Defendant Mike Keener replaced Zellars and Long and now hold their positions.  (*Id.* ¶¶ 6–9.)

In March 2020, Graham told Zellars her dark-skinned African American coworkers were "verbal[ly] disrespect[ing] her based on the color of her skin."  (*Id.* ¶ 20.)  Zellars did not discipline the employees who allegedly disrespected Graham, and the "colorist treatment" continued.  (*Id.* ¶ 23.)  Eventually, Graham noticed she was working fewer hours and complained to Zellars, stating "is this happening because I'm lighter skinned."  (*Id.* ¶¶ 34-36.)  A little more than a week later, Zellars and Long terminated her employment.  (*Id.* ¶ 37.)

Graham filed her original complaint on January 21, 2025, naming the Board of Regents of the University System of Georgia ("the BOR") as

2

the sole defendant (but referring to Zellars and Dewberry by name).

(Dkt. 1.)  She asserted discrimination and retaliation claims under 42

U.S.C. § 1981.  (*Id.* ¶¶ 35–53.)  She filed the complaint on the final day of

the statute of limitations.[1]  The BOR—represented by the same counsel

as Defendants—moved to dismiss, arguing it was an "improper

defendant" for a section 1981 claim and was entitled to Eleventh

Amendment immunity.  (Dkt. 4. at 5.)  Instead of responding, Graham

amended her complaint on April 9, 2025.  (Dkt. 9.)  The amended

complaint substituted Dewberry, Long, Keener, and Zellars for the BOR;

added corresponding allegations; and asserted new Equal Protection

claims.[2]  (*Id.*)

---

[1] The four-year anniversary of Graham's termination was January 19, 2025, which fell on a Sunday.  The next day was MLK day.  So the statute of limitations did not expire until January 21, 2025.  *See Baker v. Birmingham Bd. of Education*, 531 F.3d 1336, 1337–38 (11th Cir. 2008) (holding that the four-year limitations period set out in 28 U.S.C. § 1658(a) applies to section 1981 claims against public actors).

[2] The Magistrate Judge found Graham untimely asserted her Equal Protection claims.  (Dkt. 33 at 8.)  Neither side objects to that conclusion. The Court agrees well.  A two-year statute of limitations applies to Graham's constitutional claims, so her Equal Protection claims were untimely, even if they relate back to the initial pleading.  *See Mullinax v. McElhenney,* 817 F.2d 711, 716 n.2 (11th Cir. 1987).

Defendants moved to dismiss, arguing Graham's claims are time-barred and fail as a matter of law. (Dkt. 26.)  The Magistrate Judge issued the R&R, finding Graham's section 1981 claims against Keener and Dewberry (in their official capacities) and Zellers and Long (in their individual capacities) relate back to the original pleading and thus are not barred by the statute of limitations. (Dkt. 33 at 15–17.)  She also concluded that, notwithstanding its timeliness, Graham's individual-capacity claim against Long fails as a matter of law.  (*Id.* at 24.) Defendants only object to the Magistrate Judge application of the relation back rule.  (Dkt. 35 at 2.)  Graham filed no objections.

## II.   Standard of Review

### A.   Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  The party seeking dismissal, of course, bears the burden of showing he or she is entitled to dismissal, including

by "presenting adequate support for their position." *Caldwell v. Kimberly-Clark USA, LLC*, 783 F. Supp. 3d 1367, 1377 (S.D. Ala. 2024).

### B. R&R

28 U.S.C. § 636(b)(1) requires district courts to "make a de novo determination of those portions of [an R&R] to which objection is made." Any such objection "must specifically identify the portions of the [R&R] to which objection is made and the specific basis for objection." *McCullars v. Comm'r, SSA*, 825 F. App'x 685, 694 (11th Cir. 2020);[3] *see United States v. Schultz*, 565 F.3d 1353, 1360 (11th Cir. 2009) ("[A] party that wishes to preserve its objection must clearly advise the district court and pinpoint the specific findings that the party disagrees with."). "Frivolous, conclusive, or general objections need not be considered by the district court." *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988).

"It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or

---

[3] The Court recognizes *McCullars* is unpublished and not binding. The Court cites it and other unpublished cases nevertheless as instructive. *See Searcy v. R.J. Reynolds Tobacco Co.*, 902 F.3d 1342, 1355 n.5 (11th Cir. 2018) ("Unpublished cases do not constitute binding authority and may be relied on only to the extent they are persuasive.").

any other standard, when neither party objects to those findings." *Thomas v. Arn*, 474 U.S. 140, 150 (1985).  In most cases, "[a] party failing to object to [an R&R] waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." *McGriff v. Comm'r, SSA,* 654 F. App'x 469, 472 (11th Cir. 2016).  Ultimately, whether objections are filed, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).

## III.  Discussion

Under Federal Rule of Civil Procedure 15(c)(1)(C), an amendment to a pleading that changes a party relates back to the date of the original pleading when (1) it asserts a claim arising out of the conduct, transaction, or occurrence alleged in the original complaint, (2) the proposed new defendant received notice of the action within 90 days from the start of the original action, and (3) the proposed new defendant ***"knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."***  Fed. R. Civ. P. 15(c)(1)(C) (emphasis added).

6

The Magistrate Judge found the first requirement easily met because Graham's current claims arise from the same events at issue in her initial complaint. (Dkt. 33 at 12.) She found the second requirement also easily met because Graham filed the current complaint against Defendants just 74 days after the initial complaint, Zellars and Dewberry were named in the original complaint, and the lawyer who moved to dismiss the original complaint for improperly naming the BOR as an improper defendant represents all four Defendants. (*Id.*) Defendants do not object to these conclusions, and the Court adopts them. *Kuria v. Palisades Acquisition XVI, LLC*, 752 F. Supp. 2d 1293, 1305 (N.D. Ga. 2010) ("Because counsel for the incorrectly named defendant was the same person as for the correctly named defendant, there was immediate actual notice to the proper defendant that it should have been named in the lawsuit but for Kuria's mistake.").

As to the third requirement, the Magistrate Judge assumed Graham's failure to name Defendants in the original complaint was a "legal mistake" that qualifies under Rule 15(c)(1)(C)(ii). (Dkt. 33 at 12–13.) So the Magistrate Judge focused on whether Defendants "knew or should have known" they would have been named in the original

7

complaint but for Graham's mistake.  (*Id.* at 12–17.)  She inferred they did by looking at the relief Graham sought in her original complaint.  (*Id.*) The Magistrate Judge reasoned that, because Defendants were aware of the lawsuit and the BOR was immune from suit, they would have known they were the only parties who could provide Graham with monetary and injunctive relief.  Specifically, they would have known that Keener and Dewberry (in their official capacities) were the proper parties to provide injunctive relief because only a *current* state official sued in his or her official capacity has the authority to effect such relief.  (*Id.* at 14–15 (citing *DeWitt v. Person*, 2025 WL 1368170, at *2 n.3 (11th Cir. May 12, 2025)).)  And they would have known that Long and Zellars (in their individual capacities) were the proper parties to Graham's claims for monetary relief because only officials sued individually can be liable for damages and Graham did not allege Dewberry and Keener personally participated in the alleged misconduct. (*Id.*) Thus, the Magistrate Judge concluded Graham's section 1981 claims against Long and Zellars (in their individual capacities) and against Keener and Dewberry (in their official capacities) related back to the original pleading.  (*Id.* at 16–17.)

Defendants' only object to the Magistrate Judge's conclusion that Graham's "legal mistake" in naming the BOR qualifies as a "mistake" under Rule 15(c)(1)(C)(ii). (Dkt. 35.) They contend a "legal mistake" is not a cognizable "mistake" under Rule 15(c) because it is not one that "concern[s] the proper party's identity" or "the role that a party played in the conduct, transaction, or occurrence giving rise to [Graham's] claim." (Dkt. 35 at 5–8 (quoting Fed R. Civ. P. 15(c)(1)(C)(ii) and *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 549 (2010)).) They thus argue they could not have "known the action would have been brought against them but for a mistake," because Graham's failure to name them in the original complaint was not a mistake under Rule 15(c). (Dkt. 35 at 5–8.)

Though the Court concurs with the R&R's conclusion that Graham satisfies the mistake requirement—and thus overrules Defendants' objection—they are right to question how the Magistrate Judge got there. It appears the Magistrate Judge assumed, without explanation, that any "legal mistake" necessarily qualifies as a "mistake" under Rule 15(c). (*See* Dkt. 33 at 12–17.) But the Eleventh Circuit has never squarely addressed the issue. So the Court does.

9

A mistake is defined as "[a]n error, misconception, or misunderstanding; an erroneous belief." *Krupski*, 560 U.S. at 548. Courts construe the term "mistake" liberally in applying Rule 15(c). *See Itel Capital Corp. v. Cups Coal Co.*, 707 F.2d 1253, 1258 n.9 (11th Cir. 1983). Further, and critical here, "[t]hat a plaintiff knows of a party's existence does not preclude her from making a mistake with respect to that party's identity." *Krupski*, 560 U.S. at 549. This is because:

> "[A] plaintiff might know that the prospective defendant exists but nonetheless harbor a misunderstanding about his status or role in the events giving rise to the claim at issue, and she may mistakenly choose to sue a different defendant based on that misimpression. That kind of deliberate but mistaken choice does not foreclose a finding that Rule 15(c)(1)(C)(ii) has been satisfied.

*Id.*

The Second, Sixth, and Seventh Circuits have held a mistake of law can qualify as a "mistake" under Rule 15(c) in certain circumstances. *See, e.g.*, *Black-Hosang v. Ohio Dep't of Public Safety*, 96 F. App'x 372, 375–76 (6th Cir. 2004); *Soto v. Brooklyn Corr. Facility*, 80 F.3d 34, 35–36 (2d Cir. 1996); *Woods v. Indiana Univ.-Purdue Univ. at Indianapolis*, 996 F.2d 880, 887 (7th Cir. 1993). In each of those cases, the plaintiff initially sued an institutional defendant that was either immune from suit or

10

could not be liable on the facts alleged, and then—after discovering the legal mistake—amended his or her complaint outside the limitations period to substitute individual defendants who were amenable to suit. In each case, the court concluded the amendment related back to the filing of the original complaint.

In *Soto*, for example, the plaintiff brought a failure-to-protect claim against a correctional facility for allowing him to be attacked by another inmate. Arguing the plaintiff was asserting a so-called *Monell* claim, the defendant moved to dismiss because the plaintiff had not alleged a municipal policy or custom as required for such a claim. *Soto*, 80 F.3d at 35. Plaintiff recognized his legal error and sought to amend his complaint outside the limitations period to substitute the corrections officers who he believed failed to protect him. *Id.* The Second Circuit held the plaintiff's erroneous naming of the facility was a "legal mistake" cognizable under Rule 15(c). *Id.* It reached this conclusion for two reasons. First, the court concluded plaintiff's failure to name the individual defendant "[could] not be considered a matter of choice" because the plaintiff "was required" to sue the individual defendants to maintain his action. *Id.* Second, the court noted that the "'mistake'

11

criterion was introduced in the 1966 Amendment to Rule 15" and, according to the Advisory Committee Notes, the "language was prompted by several cases in which plaintiffs, unaware of the technical requirements of the law, mistakenly named institutional instead of individual defendants." *Id.*

In *Black-Hosang*, the plaintiff sued the Ohio Department of Public Safety—an entity entitled to Eleventh Amendment immunity—for false arrest without including the officer who had arrested her. 96 F. App'x at 373. When the government entity moved to dismiss, the plaintiff sought to substitute the officer after expiration of the statute of limitations. *Id.* Relying on *Soto*, the Sixth Circuit found the plaintiff's legal error was "exactly the sort of mistake contemplated by the drafters" of the Rule. *Id.* at 375. The court also concluded the mistake was necessarily one "concerning the identity of the proper party" because "[s]he erroneously sued the [institutional defendant] when she should have sued the individual officer." *Id.* at 375–77.

Finally, in *Woods*, the plaintiff sued a state university and its police department—two entities entitled to Eleventh Amendment immunity— alleging they illegally search his home. 996 F.2d at 883. After the court

12

dismissed his complaint, plaintiff filed an amended complaint outside the limitations period against the individuals responsible for the search. *Id.* The Seventh Circuit found the amendment related back to the time of the original pleading because "every state's sovereign immunity from, and all state employees' personal exposure to, section 1983 liability for constitutional torts was clearly established when [the] lawsuit was filed (even though that realization came only belatedly to [plaintiff's] lawyer)." *Id.* at 887. Thus, the plaintiff committed an obvious "legal blunder," and "the omitted defendants should have known . . . they would have been named to begin with but for" the plaintiff's mistake. *Id.*

The Court finds these cases persuasive. A legal mistake may be a "mistake concerning the proper party's identity" under Rule 15(c) where a plaintiff erroneously sues an entity that cannot be liable to it, in lieu of a correct one, based on a misunderstanding of the original defendant's legal status, including its ability to be held liable. Such is the case here. Graham intended to assert a claim based on her alleged mistreatment by Zellars and Long. She initially sued the BOR, evidently believing it was amenable to suit and could provide the relief she sought. (Dkt. 1.) But

13

Graham was mistaken.[4]  (*See* Dkt. 33 at 12–17.)  Just as the plaintiffs in *Soto*, *Black-Hosang*, and *Woods*, Graham made a mistake as to the identity of the proper party to sue for her injuries—she believed it was the BOR when it was Keener, Dewberry, Zellars, and Long.  That was a "mistake" within the meaning of Rule 15(c)(1)(C)(ii).  This understanding of a "mistake" is consistent with *Krupski*.  In that case, the Supreme Court found a plaintiff's prior knowledge of the "proper party's" existence does not preclude a finding of mistake where the plaintiff has a "[mis]understanding [of] the factual *and legal* differences" between that known party and the party initially sued.  *Krupski*, 560 U.S. at 549 (emphasis added) ("A plaintiff may know that a prospective defendant—call him party A—exists, while erroneously believing him to have the status of party B. … If the plaintiff sues party B instead of party A under these circumstances, she has made a 'mistake concerning the proper party's identity' notwithstanding her knowledge of the existence of both

---

[4] Even if this mistake was unreasonable—and the Court believes it was in the light of the cases Defendants identify in their objections (Dkt. 35 at n. 3)—*Krupski* instructs that "the reasonableness of [plaintiff's] mistake is not itself at issue."  560 U.S. at 549.  Rather, as discussed in more detail below, what matters is what *Defendants* thought of the mistake.

parties.")  This conclusion is also faithful to the original purpose of Rule 15(c)(1)(C): to "facilitate a proper decision on the merits" rather than to allow "one misstep by counsel"—such as "mistakenly nam[ing] [an] institutional [defendant] instead of individual defendants"—from barring an otherwise viable claim.  *Woods*, 996 F.2d at 882; *Soto*, 80 F.3d at 35; *see Krupski*, 560 U.S. at 550–51 (explaining that Rule 15(c)(1)(C)'s mistake provision was intended to allow plaintiffs to amend their complaints when they sued the incorrect government entity).

The Court recognizes one judge in this District and two others within the Eleventh Circuit have suggested a legal mistake is not a "mistake" under Rule 15(c).  *See Scott v. Safeco Ins. Co. of Indiana*, 2020 WL 4934486 (N.D. Ga. June 24, 2020); *Stewart v. Bureaus Inv. Grp.*, LLC, 309 F.R.D. 654 (M.D. Ala. 2015); *Nobles v. Rural Cmty. Ins. Servs.*, 303 F. Supp. 2d 1279, 1287 (M.D. Ala. 2004).  Those cases are distinguishable.  In each, the plaintiff (after discovering a legal error) did not seek to substitute a new party in place of the initial party (as Graham does here) but rather to *add* an additional defendant after the statute of limitations

15

expired.[5] The former involves no mistake regarding the "identity" of the proper party, while the latter does. *See In re Vitamin C Antitrust Litig.*, 995 F. Supp. 2d 125, 129 (E.D.N.Y. 2014) ("As a matter of plain language, [Rule 15(c)(1)(C)] would appear to include only 'wrong party' cases, and not 'additional party' cases. … In an "additional party" case like this one, there generally will be no 'mistake concerning' the proper party's 'identity.' The plaintiff has sued the right defendant, and simply neglected to sue another defendant who might also be liable.") Graham's mistake falls on the correct side of that distinction.

Having decided Graham's failure to sue Defendants at the start was a "mistake" covered by Rule 15(c)(1)(C), the Court must still determine

---

[5] In *Scott*, the plaintiffs initially failed to sue an *additional* defendant who, under Georgia law, was necessary to obtain the relief they sought. 2020 WL 4934486, at *1–4. So the plaintiffs did not mistake the initially sued defendant as the "proper party," but instead simply neglected to sue another necessary defendant. In other words, there was no mistake regarding the "identity" of the proper party—just a misunderstanding of the law. Similarly, in *Stewart*, the plaintiff sought to *add* a defendant belatedly who she did not initially sue because of a misunderstanding of liability under the FDCPA. 309 F.R.D. at 662. Because this involved no misunderstanding of the identity of a "proper party," the court found it was not a mistake under Rule 15(c). *Id.* So too in *Nobles*—there, the plaintiffs sought to *add* a defendant who they only realized could be liable after the limitations period expired because of a "mistake in legal judgment." 303 F. Supp. 2d at 1287.

16

whether Defendants "knew or should have known that the action would have been brought against" them but for that mistake. Fed. R. Civ. P. 15(c)(1)(C)(ii). Defendants do not argue this aspect of Rule 15(c)(1)(C)(ii). Regardless, given the allegations and relief sought in the original complaint—which they do not dispute they had notice of—Defendants knew or should have known they were the intended targets of Graham's action. As the Magistrate Judge noted, Zellars and Long—the individuals responsible for the adverse employment action alleged in the original complaint—and Keener and Dewberry—the officials currently holding Zellars' and Long's positions—were natural defendants for Graham's claims. (Dkt. 1 ¶ 39.) And because counsel for Defendants argued the BOR was not subject to suit, counsel must have considered which parties could be liable for the conduct alleged in the original complaint. *See Lindley v. City of Birmingham, Ala.*, 652 F. App'x 801, 804 (11th Cir. 2016) ("Constructive notice satisfies Rule 15(c)'s requirements and can be imputed to a new defendant through her attorney if that attorney also represents the parties originally sued.") Further, Defendants must have known their omission from the original complaint was a "mistake" rather than a "deliberate choice" because they

17

have "articulated no strategy that [they] could reasonably have thought [Graham] was pursuing in suing a defendant that was legally unable to provide relief." *Krupski*, 560 U.S. at 555.

The Court concludes Graham's "legal mistake" in suing the BOR was a "mistake" under Rule 15(c)(1)(C)(ii) and Defendants knew her "action would have been brought against [them], but for a mistake concerning the proper part[ies'] identit[ies]." Fed. R. Civ. P. 15(c)(1)(C)(ii). It also agrees with and adopts the Magistrate Judge's reasoning—to which Defendants do not object—regarding which Defendants can be sued in which capacities (i.e., Keener and Dewberry in their official capacities and Zellers in his individual capacity). Graham's claims may proceed against those Defendants as if they were timely filed. All other claims are dismissed.

## IV.   Conclusion

The Court **OVERRULES** Defendants' objections (Dkt. 35), **ADOPTS** the R&R (Dkt. 33), and **GRANTS IN PART** Defendants' Motion to Dismiss (Dkt. 26).

**SO ORDERED** this 23rd day of March, 2026.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE

18